# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONSERVATION LAW FOUNDATION,**<br><br>    Plaintiff,<br><br>    v.<br><br>**WILBUR ROSS, in his official capacity as Secretary of the Department of Commerce, *et al.*,**<br><br>    Defendants. | Civil Action No. 18-1087 (JEB) |

## MEMORANDUM OPINION AND ORDER

Just a few lines into this litigation's opening scene, Defendants have asked for an intermission. After Plaintiff Conservation Law Foundation filed a motion for summary judgment, Defendants — one federal agency and two officials — moved to remand the case to Defendant National Marine Fisheries Service for 30 days. During this period, they propose allowing the Agency to provide further explanation for one of its decisions challenged here. Finding that equitable factors ultimately favor permitting this brief interlude, the Court will exercise its discretion to grant Defendants the limited remand they seek.

## I.   Background

Given the early stage of the proceedings, the Court offers only the background details necessary to tee up the narrow dispute at issue, saving a more robust rehearsal for a future date.

This case revolves around the Service's promulgation of the Habitat Amendment, an omnibus amendment to several fishery-management plans that govern fishing activity in the waters seaward of New England. The process that led to this Amendment was not all above board, says Plaintiff. A central tenet of CLF's case asserts that the Service came up short of its

1

obligation under the Endangered Species Act to account for the effects of its decision on North American right whales. See ECF No. 32 (Pl. Opp.) at 3. Under the ESA, an agency must "insure that" its actions are "not likely to jeopardize the continued existence of any endangered . . . or threatened species or" harm such species' "critical" habitat. See 16 U.S.C. § 1536(a)(2). This process, generally speaking, entails two steps. The implementing regulations task the agency with first determining whether its proposed action "may affect listed species or critical habitat." 50 C.F.R. § 402.14(a). If the agency answers in the affirmative for any species or habitat, that determination triggers the ESA's "formal consultation" requirement, provided that one of two exceptions does not apply. Id. If the agency determines, conversely, that its action would not have such an affect, the ESA does not impose a further consultation obligation.

      The administrative record, CLF contends, reveals that the Habitat Amendment would affect right whales. It thus faults the Agency for not engaging in formal consultation. See Pl. Opp. at 3. The Service tells a different version of events. It counters that it did consider the effect of its action on right whales but concluded that further consultation was not required. The existing record, the Agency says, supports this determination. See ECF No. 29 (Def. Mot.) at 1–2, 8–10; ECF No. 34 (Def. Reply) at 2. It confesses, however, that it "did not clearly document its decisionmaking process," Def. Reply at 2, or follow the procedures "that it customarily would under these circumstances." Def. Mot. at 10. It is this documentation that the Agency proposes to provide on remand. "[B]ased on a checklist of relevant factors," the Service says, it "will consider whether the Habitat Amendment requires it to reinitiate consultation." Def. Reply at 3. Providing a clear explanation of the Agency's decision now, it says, will promote judicial economy by preventing a situation in which the Court would demand such an explanation in a

2

remand following a subsequent summary-judgment ruling. See Def. Mot. at 10–11. Plaintiff opposes the Government's Motion and would prefer moving forward on the existing record.

**II.     Legal Standard**

The Court has "broad discretion to grant or deny an agency's motion to remand." Util. Solid Waste Activities Grp. v. EPA, 901 F.3d 414, 436 (D.C. Cir. 2018); see also Code v. McHugh, 139 F. Supp. 3d 465, 468 (D.D.C. 2015) ("The decision whether to grant an agency's request to remand is left to the discretion of the court."). That said, courts will "generally grant an agency's motion . . . so long as 'the agency intends to take further action with respect to the original agency decision on review.'" Util. Solid Waste Activities Grp., 901 F.3d at 436 (quoting Limnia, Inc. v. U.S. Dep't of Energy, 857 F.3d 379, 386 (D.C. Cir. 2017)). The rationale for this approach is clear: courts "prefer[] to allow agencies to cure their own mistakes rather than wast[e] the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." Ethyl Corp. v. Browner, 989 F.2d 522, 524 (D.C. Cir. 1993); accord FBME Bank Ltd. v Lew, 142 F. Supp. 3d 70, 73 (D.D.C. 2015). For this reason, "[v]oluntary remand is typically appropriate (i) when new evidence becomes available after an agency's original decision was rendered, or (ii) where intervening events outside of the agency's control may affect the validity of an agency's actions." FBME Bank Ltd., 142 F. Supp. 3d at 73 (internal citations and quotation marks omitted).

These are not the only circumstances, however, in which a voluntary remand is appropriate. "Even in the absence of new evidence or an intervening event, . . . courts retain the discretion to remand an agency decision when an agency has raised 'substantial and legitimate' concerns in support of remand." Id. (quoting Carpenters Indus. Council v. Salazar, 734 F. Supp. 2d 126, 132 (D.D.C. 2010)). Two factors constrain this discretion. First, the Court will not grant

3

an agency request that "appears to be frivolous or made in bad faith." Util. Solid Waste Activities Grp., 901 F.3d at 436. Second, courts should "consider whether remand would unduly prejudice the non-moving party." Id.; see also FBME Bank Ltd., 142 F. Supp. 3d at 73 (similar).

## III. Analysis

Because there is no argument here that new evidence or intervening events cast doubt on the Agency's decision, this Motion falls into the final bucket identified above: the Court's broad discretion to grant requests that raise "substantial and legitimate" concerns. See FBME Bank Ltd., 142 F. Supp. 3d at 73. The Court believes that the Agency satisfies this threshold inquiry.

The Government's request for a voluntary remand rests on its tacit admission that the administrative record is, in at least one respect, incomplete. As Defendants tell it, the Service concluded that its action — i.e., the Habitat Amendment — did not trigger the ESA's formal consultation requirements. See Def. Reply at 2 (noting Service's "determination that it was not required to consult"). The administrative record, they further state, contains the factual underpinnings necessary to support this conclusion. See Def. Mot. at 10 (stating that existing record "supports a finding that the Habitat Amendment did not trigger a duty . . . to reinitiate consultation"). What appears lacking, however, is clear documentation of the Agency's line of reasoning that connects these facts to its ultimate conclusion. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983) (requiring agency to "articulate a satisfactory explanation for its action including a rational connection between the facts found and choice made") (internal quotation marks omitted); see also Def. Reply at 2 ("NFMS did not clearly document its decisionmaking process."); Def. Mot. at 10 ("[T]he Court could also conclude that the record is not sufficiently clear."); Def. Reply at 3 (proposing on

4

remand "to provide a supplemental explanation . . . that clearly sets forth the agency's rationale").

Whether a voluntary remand serves the goal of judicial efficiency hinges on how a court might proceed in response to this potential deficiency in the record. On one hand, such deficiency does not mandate that a reviewing court necessarily find the Agency's action unlawful. A decision that is not fully explained may nevertheless be upheld "if the agency's path may be reasonably discerned." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974). For this reason, presumably, Defendants do not confess error outright, but contend that the Court could continue on the normal course of judicial review. See Def. Mot. at 10 (citing Bowman Transp., Inc., 419 U.S. at 285–86). On the other hand, however, a reviewing court's more likely path would be to send the case back to the source in such a circumstance. See Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006) (noting that Supreme Court "approved the procedure of remanding so that an agency can provide an explanation for an inadequately articulated decision"). That is to say, if the existing record does not provide an adequate line of reasoning that permits a reviewing court to "evaluate the challenged agency action," then "the proper course, except in rare instances, is to remand to the agency for additional investigation or explanation." Delta Air Lines, Inc. v. Export-Import Bank of U.S., 85 F. Supp. 3d 436, 448 (D.D.C. 2015) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)); see also id. at 449 (noting that in prior remand agency "only was ordered to provide further explanation on remand in an effort to justify the authorizations that it already had made, not to revisit and reissue those decisions anew"); AFL-CIO v. McLaughlin, 702 F. Supp. 307, 310 (D.D.C. 1988) (stressing "that this case was not remanded to the Department so it might reexamine its . . . policy"; rather, "the Department was simply required to furnish a rational

5

explanation for its actions"), case dismissed sub nom. AFL-CIO v. Dole, 1989 WL 105583 (D.C. Cir. Aug. 9, 1989). Such an explanation is, of course, what the Service has offered to provide voluntarily here. Proceeding in this manner could thus spare the full round of summary-judgment briefing and the Court's subsequent opinion, accelerating the litigation by several months.

Plaintiff offers two primary retorts to the propriety of a remand here. First, it dismisses any Agency action on remand as constituting mere *post hoc* rationalizations unworthy of judicial attention. See Pl. Opp. at 6–12. As the D.C. Circuit has repeatedly pointed out, however, the documents that the Service would generate on remand do not fit this moniker. The circuit's language regarding the prohibition on *post hoc* rationalization is worth quoting at length, given its applicability:

> [The] rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning. It is a rule directed at reviewing courts which forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decisionmakers. Thus the rule applies to rationalizations offered for the first time in litigation affidavits and arguments of counsel. The policy of the *post hoc* rationalization rule does not prohibit [an agency] from submitting an amplified articulation of the distinctions it sees. . . . Moreover, the logic of the rule requires it. If a reviewing court finds the record inadequate to support a finding of reasoned analysis by an agency and the court is barred from considering rationales urged by others, only the agency itself can provide the required clarification.

Alpharma, Inc., 460 F.3d at 6–7 (alterations in original) (quoting Local 814, Int'l Bhd. of Teamsters v. NLRB, 546 F.2d 989, 992 (D.C. Cir. 1976)).

Second, CLF contends that voluntary remands should be limited to situations in which the Agency commits to reconsidering its decision. See Pl. Opp. at 12–14. Given that the Government only offers to explain its decision, but likely holds fast to the ultimate result,

6

Plaintiff maintains that the Court cannot grant Defendants' request here. It is true that the universe of a court's discretion is limited to situations in which an agency pledges "further action with respect to the original agency decision under review," rather than some future action. See Limnia, Inc., 857 F.3d at 386. But as long as the requested remand clears this hurdle, the Court of Appeals has explained that a broad swath of actions is permissible on remand. Id. at 387 (noting that "the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision"). The Court sees no bar to a voluntary remand that requires an agency to explain its previously rendered decision.

The Court thus concludes that Defendants have raised substantial and legitimate concerns in support of remand and that sending this action back to the Agency for a limited period will promote efficiency. Given the lack of any evidence or allegation of bad faith, there is only one more step in the analysis. Against this judicial economy, the Court must weigh any prejudice to Plaintiff. See Util. Solid Waste Activities Grp., 901 F.3d at 436. CLF raises two forms. First, it points out that it has already filed its Motion for Summary Judgment. See Pl. Opp. at 2. An amended administrative record would quite clearly require new work on CLF's behalf. Id. Second, it contends that the fishing activity permitted by the Habitat Amendment is damaging the right whale — a species already in a precarious position — and that a remand will delay any relief. Id. As an initial note, any such relief would require that the Court both rule in Plaintiff's favor and demand that the Amendment be vacated. In any event, forcing CLF to resubmit its summary-judgment motion is hardly prejudicial, and the limited temporal period of the remand also minimizes prejudice.

*　　*　　*

Given the limited nature of the requested remand, in both duration and scope, the Court concludes that equitable factors counsel in favor of granting the Agency a chance to offer a complete explanation for its action before this litigation proceeds to the next act. It will, accordingly, grant Defendants' Motion. So that this matter shall proceed expeditiously, the Court will also order that the Service turn over the documentation of its analysis generated on remand and all related documents to Plaintiff on the expiration of this remand, after which Plaintiff will have an opportunity to file an amended motion for summary judgment.

**IV.    Conclusion**

For the foregoing reasons, the Court ORDERS that:

1. Defendants' Motion to Remand is GRANTED;

2. The case is REMANDED to the National Marine Fisheries Service through April 25, 2019;

3. Briefing shall remain STAYED until further Order of the Court;

4. By April 25, 2019, Defendants shall provide documentation of their analysis generated on remand and all related documents to Plaintiff, who will be permitted to file a renewed Motion for Summary Judgment; and

5. The parties shall file a joint proposed briefing schedule for summary judgment by April 29, 2019.

IT IS SO ORDERED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 26, 2019